FILED

2007 Feb-23  PM 04:00
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| SANDRA HENRY, | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| v. | } | Case No.:  2:05-CV-1788-RDP |
| | } | |
| JEFFERSON COUNTY PERSONNEL | } | |
| BOARD, | } | |
| | } | |
| **Defendant.** | } | |

## MEMORANDUM OPINION

The court has before it Defendant's Motion for Summary Judgment (Doc. # 13) filed August 1, 2006, and Defendant's Motion to Strike (Doc. # 20) filed September 11, 2006. The motions have been fully briefed and were deemed submitted, without oral argument, as of November 3, 2006.[1] For the reasons outlined below, the court finds that the motion for summary judgment is due to be granted. Defendant's motion to strike will be denied.[2]

## I. Legal Standards for Evaluating a Summary Judgment Motion

Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R .Civ. P. 56. All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the nonmovant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112,

---

[1] Although the court's scheduling order and briefing schedule provided that the motion for summary judgment would be under submission as of September 11, 2006 (Docs. # 7, 10), the court requested additional briefing on the issue of the Board's liability. (Doc. # 24). Accordingly, the submission date was extended until November 3, 2006, when the parties' briefing on immunity was completed. (Docs. # 28, 29).

[2] The court has reviewed Defendant's motion to strike and will assume, without deciding, for the purposes of summary judgment only, that it is due to be denied and that the evidence sought to be stricken is properly considered by the court in its summary judgment analysis. As the court is granting summary judgment in favor of the Defendant, it finds that, even considering the evidence sought to be stricken, Plaintiff has not met her burden to refute the Defendant's motion for summary judgment submission.

1115 (11th Cir. 1993).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

A plaintiff in an employment discrimination case maintains the ultimate burden of proving that the adverse employment decision was made because of intentional discrimination.  *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 134 (2000); *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509-12 (1993); *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1184 (11th Cir. 1984).  Although the Supreme Court previously established the basic allocation of burdens and order of proof in a disparate treatment case, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248 (1981), as modified by *Desert Palace v. Costa*, 539 U.S. 90 (2003), that allocation scheme applies only in cases where there is no direct evidence of discrimination, *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 595 (11th Cir. 1987).[3]

Under the *McDonnell Douglas/Burdine* scheme, a plaintiff first has the burden of proving by a preponderance of evidence a *prima facie* case of discrimination.  Second, once the plaintiff proves a *prima facie* case, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its employment decision.  Finally, if the defendant carries its burden, the plaintiff must *either* prove by a preponderance of the evidence that the legitimate reasons offered by the defendant are merely a pretext for discrimination *or* present sufficient evidence, of any type, for a reasonable jury to conclude that discrimination was a "motivating factor" for the employment action, even though defendant's legitimate reason may also be true or have played some role in the decision.  *McDonnell Douglas*, 411 U.S. at 802-05; *Burdine*, 450 U.S. at 252-54; *Desert Palace*, 539 U.S. at 101-02.  The Court is aware that the summary judgment rule applies in job discrimination cases just as in other cases. *Chapman v. AI Transport*, 229 F.3d 1012, 1025 (11th Cir.

---

[3] Although Plaintiff's claims of discrimination can be established by direct or circumstantial evidence, *Jones v. BE & K Engineering Co.*, 146 Fed.Appx. 356, 358-59 (11th Cir. 2005), Plaintiff has not offered nor argued direct evidence of discrimination in this case.

2000) (rejecting an earlier, contrary general rule and emphasizing that no thumb is to be placed on either side of the scale).

## II.    Relevant Undisputed Facts[4]

On July 8, 2002, after having found the Jefferson County Personnel Board (the "Board") in civil contempt for failing to comply with various court orders, Judge Lynwood Smith of the United States District Court for the Northern District of Alabama entered an order appointing Ronald R. Sims, Ph.D., as Receiver of the Board. (*United States v. Jefferson County*, 2:75-CV-666-CLS, Doc. # 935 (N.D.Ala. July 8, 2002) (the "Order" or "Judge Smith's Order"). Pursuant to the Order, Sims received "all powers vested by Act No. 248 (Enabling Act) in the three members of the Personnel Board and Personnel Director, including the power to hire, promote, demote, transfer, and remove subordinates as necessary." (*United States v. Jefferson County*, 2:75-CV-666-CLS, Doc. # 935, at 2, 11-12 (N.D.Ala. July 8, 2002); June 7, 2006 Henry Dep., pp. 17-18). During his tenure as Receiver, Sims transferred employees within the Board, hired consultants, hired a Deputy Director, hired new employees, terminated employees, and created two new departments. (June 7, 2006 Henry Dep.,  pp. 19, 20, 26, 27).

Plaintiff Sandra Henry was employed with the Board from April 1987 until January 2005, with the exception of a three-month period in 1988 when she transferred to the City of Birmingham. (Henry Dec., ¶ 2). Prior to the appointment of Sims as Receiver, Plaintiff held the position of Administrative Coordinator in the Administrative Division of the Board, which was a Salary Grade 22 position with an annual salary of $50,523. (June 7, 2006 Henry Dep.,  p. 33; Henry Dec., ¶ 6). In this position, Plaintiff provided advanced administrative and clerical support for the Director of Personnel and the three Board members, including "answer[ing] the phone and [] schedul[ing] meetings, [] work[ing] with the Board as far as the minutes were

---

[4] If facts are in dispute, they are stated in the manner most favorable to Plaintiff. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). However, when applicable, the court has noted what facts are in dispute.

concerned, [preparing] the minutes, and [preparing] the agenda, [and] attend[ing] the Board meetings." (Henry Dec., ¶ 6; James Dep., pp. 55-56). It is undisputed that prior to Sims' tenure as Receiver, Plaintiff was the highest classified clerical employee in the Administrative Division of the Board. (Henry Dec., ¶ 3).

A.      **Plaintiff's Job Duties After the Appointment of Sims as Receiver**

On August 14, 2002, Sims relocated Plaintiff's office to the office next to it so that April Hunter, who was hired as the Principal Administrative Analyst, a Salary Grade 28 position, could be moved into Plaintiff's old office, which was next to Sims. (Henry Dec., ¶ 7,8; Sims Dep., pp. 21-22). According to Sims, "[Hunter] was hired in a management leadership position to provide leadership for what we call our Quality Enhancement Division, which was made up of the departments, I think at the time of Employee Relations, Department of Recruiting, the Department of Training and Development, and I think the Department of Performance Assessment. [She supervised] five [employees] in Employee Relations, four in Training, three in - - I would say probably at the most twenty employees." (Sims Dep., pp. 18-19). Although Hunter did not assume any of Plaintiff's duties, Sims decided to give Hunter Plaintiff's old office because he "needed [Hunter] close to me and need [sic] to be at my ready access to her for whenever I needed her to go out and do whatever things I needed her to do." (Sims Dep., pp. 21-22). Later in October 2002, Sims awarded Hunter a non-competitive appointment to the newly created Salary Grade 34 classification of Quality Enhancement & Employee Development Division Manager. (Henry Dec., ¶ 9). Plaintiff believes that Hunter's appointment was in violation of the Board Rules, although Plaintiff does not claim that she should have been given that position. (Henry Dec., ¶ 9).

In addition to moving the location of her office, Sims also assigned Plaintiff different duties than she had previously performed as Administrative Coordinator. Specifically, Sims assigned to her the task of transcribing the Birmingham Pension Board Minutes. (Sims Dep., p. 26; Henry Dec., ¶ 10). He also assigned her to work on the "Five-Year Survey" that was being conducted by the Classification and Certification

Department because he felt that additional clerical work was required on that project. (June 7, 2006 Henry Dep., p. 24; Sims Dep., pp. 20-24). Sims informed Plaintiff that he "wanted a respected person to lead the clerical portion of the Five-Year Survey" and that he was "reassigning [Plaintiff] to the Classification and Compensation Division for that purpose." (Henry Dec., ¶ 10).

Plaintiff complains that after reporting to the Classification and Compensation Division, instead of assuming the leadership role on the survey, she received a list of "Proficiency Expectations for Compensation Support Staff" and was assigned to share an office with two other employees, which she believed to be distracting. (Henry Dec., ¶ 13, 15,16). Plaintiff's request that her office be moved was denied, although partitions were placed around her desk at her request. (Henry Dec., ¶ 17).

Despite the assignment of new duties, Plaintiff still held the official classification of Administrative Coordinator for salary purposes and was still classified as a Salary Grade 22 employee. (Henry Dec., ¶ 10). Although the parties dispute whether Plaintiff initially continued to perform her prior Administrative Coordinator duties in addition to her new assignments (*compare* Henry Dec., ¶ 8 *with* Sims Dep., pp. 22-23), there is no dispute that by October 2003, Plaintiff was no longer performing any Administrative Coordinator duties. (Henry Dec., ¶ 20).

**B.    Executive Assistant Position**

In late October 2002, Plaintiff learned that a position titled "Executive Assistant" was being advertised, which she believes was her Administrative Coordinator position with a new title. (Henry Dec., ¶ 11, Ex. 1). It is undisputed that the Executive Assistant position was created by Sims (Sims' Dep., p. 37), and that the position required a Bachelor's Degree, which Plaintiff does not have. (Henry Dec., Ex. 1; July 20, 2006 Henry Dep., p. 27, Ex. 7). The Salary Grade for both positions (Grade 22) was the same. (Henry Dec., Exs. 2, 3).

The parties dispute whether the Executive Assistant position was merely the Administrative Coordinator position with a different title.  According to Plaintiff, all of the essential functions listed on the Executive Assistant position description were duties that she performed as the Administrative Coordinator. (Henry Dec., ¶ 12, Exs. 2, 3). Plaintiff also points to the testimony of Greg James, who was a supervisor and the Interim Director prior to Sims' arrival, as evidence that the positions were the same:  "Q. Was [the newly hired Executive Assistant] position about the same as the Administrative Coordinator position that Henry had performed for the director? MR. COBB Object to the form. A. I would say they would be the same, except during [Plaintiff's] time, we had the Board in place."  (James Dep., pp. 55-56).  Defendant maintains that the Executive Assistant position is an entirely different position from the Administrative Coordinator position that Plaintiff held based upon the following testimony:  (1) Roger McCullough (a consultant for the Board and later the Human Resources Manager) testified there are "fairly significant differences" between Administrative Coordinator and Executive Assistant including more "emphasis on financial aspects of the job than what I typically see in an Administrative Coordinator," (McCullough Dep., p. 22); (2) Lorren Oliver testified that Plaintiff and the Executive Assistant "had very different jobs" and that the Executive Assistant "work[ed] with our business office, a function within a function of the Board, to track, streamline, and ensure accountability of resources in the Board . . [and performed] a variety of higher administrative kind of support functions . . . [including] being able to track and account for its resources internally," (Oliver Dep., pp. 23-24); and (3) Sims testified the job duties of Executive Assistant were "major duties and budgetary responsibilities since I now had a $16 million budget that had to be tracked, managed" and that "this was a new position that had new responsibilities" such that "other than maybe something around the petty cash, there is no overlaps [sic] in terms of the expectations [for the two positions]," (Sims Dep., p. 38, 43).

On December 16, 2002, Sims hired Valerie Johnson Pettaway, a 39-year old female, as the Executive Assistant.  (Henry Dec., ¶ 14).  Plaintiff did not apply for the position and therefore was not considered.

(Henry Dec., ¶ 11).  The parties dispute whether Plaintiff was asked to train Pettaway.  Plaintiff maintains that April Hunter instructed her to train Pettaway on her previous duties in the Administrative Division (Henry Dec., ¶ 14; June 7, 2006 Henry Dep.,  pp. 88; 133-134), but Sims maintains that Plaintiff did not train Pettaway "other just showing her where various things were at. . . [because] there was really nothing that she could really be trained on because this was a new position that had new responsibilities."  (Sims Dep., p. 43).

On May 23, 2003, Deputy Director Lorren Oliver told Plaintiff that the Board was in the process of cross-training its employees[5] and that she was being reassigned to the Certification Department effective May 28, 2003.  (Henry Dec., ¶ 19).  Plaintiff was also informed that Sims had decided that the Board would no longer be responsible for the Birmingham Pension Board duties that Plaintiff had been assigned to perform, although that never occurred and Plaintiff continued to fulfill those duties.  (Henry Dec., ¶ 18).

### C.    First Reduction-In-Force - 2003

On October 31, 2003, Sims informed Plaintiff, who was 49 years old at that time, that her position as Administrative Coordinator was being eliminated as part of a reduction-in-force ("First RIF" or "2003 RIF"), and she was placed on administrative leave.  (Henry Dec., ¶¶ 1, 20; October 31, 2003 Notice of Position Elimination).  Plaintiff was referred to an outside agency for assistance in finding other employment.  (Henry Dec., ¶ 21; June 7, 2006 Henry Dep., pp. 33-37).  The positions of five other employees - Joyce Smith (51), Barbara Carmichael (45), Darryl Bowie (41), Gregory James (54), and Keisha Cherry (31) - were eliminated by the 2003 RIF.  (June 7, 2006 Henry Dep.,  p. 39; Oliver Aff.).  Sims testified he made the decision to implement a reduction-in-force due to lack of work for those positions affected. (Sims Dep., p. 48).  He

---

[5] Although Plaintiff's affidavit suggests that she believes that she was the only employee reassigned and cross-trained (Henry Dec., ¶ 19), she admitted at her deposition that "Oliver held a staff meeting with us, the entire certification staff, and instructed us on starting to cross-train and to put together a schedule for training on what, who needed training."  (July 20, 2006 Henry Dep., p. 31).  Sims' testimony verifies that all employees in Plaintiff's Certification Department were cross-trained.  (Sims Dep., p. 32-33, 46).

identified which classifications would be eliminated by evaluating the present workload in addition to anticipating whether future work would exist for those positions. (Sims Dep., p. 62).

In November 2003, Plaintiff filed a grievance regarding the elimination of her Administrative Coordinator position. (Henry Dec., ¶ 23; Doc. # 17, Ex. A).  Plaintiff's grievance requested an audit of her job duties based upon the fact that she had been performing duties outside of the "Administrative Coordinator" classification for some time.  (Henry Dec., ¶ 20, 23).  Thereafter, on November 20, 2003, Plaintiff was told that an audit of her job duties was performed[6] and that as a result of the audit, she had the option of returning to work as an Examination and Certification Assistant, a Salary Grade 18 position, or being placed on a lay-off list for the position of Administrative Coordinator.  ((Henry Dec., ¶ 23; July 20, 2006 Henry Dep, Exs. 7, 9-11; June 7, 2006 Henry Dep.,  p. 51; Doc. # 15, Ex. E).  Plaintiff "accepted the Receiver's offer to be reclassified to Examination and Certification Assistant" without waiving her "bumping rights."[7] (June 7, 2006 Henry Dep.,  p. 49; Doc. # 15, Ex. F; Sims Dep., p. 30).  Plaintiff returned to work and was immediately reassigned to the Certification Department, where she worked from December 2003 until January 2005. (Henry Dec., ¶ 25).

On March 4, 2004, Plaintiff filed a Second Grievance related to her contention that she should have been placed on a lay-off list for the  Administrative Coordinator position on October 31, 2003, when her position was eliminated by the First RIF.  (June 7, 2006 Henry Dep., pp. 50-51).  Plaintiff claims that although

---

[6] Plaintiff mentions that no written documentation regarding this audit was ever produced in discovery.  Although Sims testified that he told Roger McCullough to perform the audit on Plaintiff's position (Sims Dep., pp. 67-68), McCullough testified that he did not have any first-hand knowledge that an audit had been performed on Plaintiff's position.  (McCullough Dep., pp. 33-34). Nonetheless, there is no dispute that Plaintiff was informed at the time of her grievance that an audit was being conducted.  Moreover, Plaintiff referenced this audit in her second grievance filed with the Federal Court.  (Doc. # 15, Ex. F).

[7] Defendant disputes that Plaintiff actually retained her bumping rights, noting that the Personnel Board Rules and Regulations provided that after she accepted the Examination and Certification Assistant position, Plaintiff had no bumping rights.  (June 7, 2006 Henry Dep.,  p. 47; McCullough Dep., p. 48).

Sims told her that she was not entitled to be on a lay-off list for Administrative Coordinator as she was never officially laid off (June 7, 2006 Henry Dep., p. 54), the Enabling Act provides that an employee can be placed on the "layoff list" if they are no longer employed with the Board or are "in active service." (Docs. # 17, 19, Ex. B, p. 40). In any event, it is undisputed that on November 20, 2003, twenty days after the October 31, 2003 elimination of Plaintiff's position, Plaintiff was offered the chance to either be placed on the lay-off list for Administrative Coordinator or to return to work as an Examination and Certification Assistant (which she chose). (Doc. # 15, Ex. E).

> ### D.     Second Reduction-In-Force - 2004

On November 17, 2004, Sims announced his intent to implement another reduction-in-force (the "Second RIF" or "2004 RIF"). (Henry Dec., ¶ 26; June 7, 2006 Henry Dep., pp. 55-59). Again, Sims determined which departments would be eliminated "based on the work that was needed" in each department and what work would be required in the future. (Sims Dep., pp. 73, 96-97). Employees were told that several departments in addition to Plaintiff's Certification Division would be affected by the Second RIF. (June 7, 2006 Henry Dep., pp. 57-58).

On December 17, 2004, Sims gave Plaintiff a Notice of Position Elimination for Examination and Certification Assistant which was to be effective January 7, 2005. (Henry Dec., ¶ 26; June 7, 2006 Henry Dep., pp. 55-61; Doc. # 15, Ex. G). At the time of the Second RIF, Plaintiff was fifty years old. (Henry Dec., ¶ 1). Latonia Reynolds and Angela Smith, two employees under the age of forty who had the most seniority in their classification, were retained at the Board as Examination and Certification Assistants, although their positions were moved to the Records Management Division. (Henry Dec., ¶ 27; McCullough Dep., pp. 66, 78). Individuals affected by the Second RIF include: Greg James (56), June Storey (53), Andrew Douglas (53), Cynthia Dowe (55), Andre Dickerson (53), Laloria Marsh (34), Denise Morgan (38), Sandra Jackson (36), Ericka Wyatt (29) and Rhonda Lumzy (34). (Doc. # 15, Ex. J, pp. 4-6).

Prior to the effective date of the elimination notice, Plaintiff applied for and received a voluntary transfer to the Jefferson County Commission as an Administrative Assistant II. (June 7, 2006 Henry Dep., pp. 71-72).

## III.   Applicable Substantive Law and Discussion

In this case, Plaintiff alleges the Board violated both the Age Discrimination in Employment Act, 29 U.S.C. § 621 ("ADEA") and Alabama's Age Discrimination Act of 1997 ("Alabama Age Act"), Ala. Code § 25-1-20 *et seq*., by effectively demoting her on the following two occasions when Sims targeted her positions for elimination in the RIFs: (1) when her position as Administrative Coordinator was eliminated as part of the First RIF in 2003 and she accepted the position of Examination and Certification Assistant; and (2) when her position of Examination of Certification Assistant was eliminated as part of the Second RIF in 2004 and she asked to be transferred to the Jefferson County Commission as an Administrative Assistant II. (June 7, 2006 Henry Dep., pp. 71-72).[8]

The Board asserts that it cannot be liable for Sims' decisions as Receiver because it had no power to act and Judge Smith's July 8, 2002 Order gave Sims judicial immunity and alternatively, because the decisions

---

[8] Although Plaintiff's complaint includes additional - albeit general - "terms and conditions" allegations, Plaintiff's summary judgment opposition makes clear that she relies on that evidence solely as evidence of pretext, not as the basis for separate claims in this lawsuit. (*Compare* Doc. # 1 *with* Doc. # 18, at 23-33). Accordingly, the court will consider only the two remaining claims related to the elimination of her two positions. *See, e.g.*, *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1322 (11th Cir. 2001) (finding claim abandoned when argument not presented in initial response to motion for summary judgment); *Bute v. Schuller International, Inc.,* 998 F. Supp. 1473, 1477 (N.D. Ga. 1998) (finding unaddressed claim abandoned); *see also Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir. 2000) (finding that failure to brief and argue an issue at the district court is sufficient to find the issue has been abandoned); *Resolution Trust Corp. v. Dunmar Corp.,* 43 F.3d 587, 599 (11th Cir. 1995); *Hudson v. Norfolk Southern Ry. Co.,* 209 F. Supp. 2d 1301, 1324 (N.D. Ga. 2001). *Cf. McMaster v. United States,* 177 F.3d 936, 940-41 (11th Cir. 1999) (noting that a claim may be considered abandoned when district court is presented with no argument concerning a claim included in the plaintiff's complaint); *Road Sprinkler Fitters Local Union No. 669 v. Independent Sprinkler Corp.,* 10 F.3d 1563, 1568 (11th Cir. 1994) (concluding that a district court "could properly treat as abandoned a claim alleged in the complaint but not even raised as a ground for summary judgment").

at issue had nothing to do with Plaintiff's age. For the following reasons, the court finds that the Board is entitled to judgment as a matter of law and its motion for summary judgment is due to be granted.

### A.    Liability of the Board

By order dated October 11, 2006, the court sought additional briefing on the following issue about which it noted concern: "if, as this court has previously determined, Ronald Sims is due judicial immunity for employment decisions rendered during his tenure as Receiver of the Board (*see Bowie v. Ronald Sims, et al.,* 2:05-CV-1050-RDP, Docs. # 13, 14 (N.D.Ala. December 7, 2005)), and if, as Judge Smith's July 8, 2002 Order appointing Sims as Receiver clearly outlines, the Board was stripped of any right to make employment decisions regarding Board members during the time that Sims was Receiver (*see United States v. Jefferson County*, 2:75-CV-666-CLS, Doc. # 935, at 2, 11-12 (N.D.Ala. July 8, 2002)), can the Board be held liable for any employment decisions made by Sims during his tenure?" (Doc. # 24). Having studied the parties' submissions and having considered the issue of the Board's liability at length, the court finds that the answer to its question regarding liability of the Board is not only found in the very document that appointed Sims to the position of Receiver, but is mandated by it. That Order - issued by Judge Smith of this court - makes clear that Sims was the sole party responsible for making employment decisions during the relevant time period, while the Board was stripped of the ability to have any input into (or role in making) those decisions. Thus, as outlined below, the Board is not - and cannot be - liable for the actions of Sims about which Plaintiff complains in this case.

As a general rule, a corporation cannot be held liable for the acts of a receiver when the corporation had no power to act. *See* 65 Am. Jur. 2d Receivers § 285 (2005); see also *Atlanta, B. & A.R. Co. v. McGill*, 69 So. 874, 874 (Ala. 1915) (holding that a railroad corporation in receivership as appointed by a federal court did not have control over the acts of a receiver and therefore cannot be held liable for the actions of that receiver and noting it would be "a great injustice . . . to deprive the railroad corporation of the custody and

control of its property" and then hold it liable for acts of the receiver and its agents); *Barnett v. Alabama Power Co.*, 104 So. 131 (Ala. 1925) ("[T]he owner who has been dispossessed by a receiver is not liable for the wrongful conduct of the receiver or his servants in the use or operation of the property.").  The court acknowledges that these decisions involve an application of state law, but also concludes that the rule of decision on this federal issue should be similarly analyzed and applied.  While Sims, pursuant to Judge Smith's Order, was vested with "all authority necessary to ensure that the Board fully, faithfully, and lawfully complies in a timely, efficient and cost effective manner and with all functions and obligations required of the Board in terms of the Board's 1981 Consent Decree . . . [including] full power to direct, control, operate, manage, and administer the property, funds, and employees of the Board [and] all powers vested by Act No. 248 in the three members of the Board and Personnel Director, including the power to hire, promote, demote, transfer, and remove subordinates as necessary," and was assigned to "perform the financial, contractual, legal, administrative, personnel duties of the Personnel Director and Personnel Board [including] assess[ing] the present organizational structure of the Personnel Board," *the Board itself was divested of all the above-mentioned powers concerning Board employees.* (*United States v. Jefferson County*, 2:75-CV-666-CLS, Doc. # 935, at 2, 4-6, 11-12 (N.D.Ala. July 8, 2002).  Judge Smith's Order specifically stated that "the members of the Jefferson County Personnel Board shall not perform the foregoing functions" with regard to Board employees as those duties were transferred solely to Sims, the Receiver.  (*United States v. Jefferson County*, 2:75-CV-666-CLS, Doc. # 935, at 11 (N.D.Ala. July 8, 2002).

It is undisputed that Sims, in accordance with Judge Smith's Order, was in fact the sole decision-maker who implemented the decisions about which Plaintiff complains in this case including the reductions-in-force (June 7, 2006 Henry Dep. at pp. 37, 61; Sims Dep. at pp. 48, 97), the assignment of new duties to Plaintiff (June 7, 2006 Henry Dep. at pp. 96, 98), and the transfer of Plaintiff to the Certification Department (June 7,

2006 Henry Dep. at p. 99).[9]  Thus, because the Board was prohibited from any participation in the decisions at issue in this case, and because Sims was the only decisionmaker with regard to those decisions, it follows as a matter of law, fact and logic that the Board cannot be liable for actions that it did not and could not take.

As an alternative argument regarding the Board's liability, Defendant maintains that the Board enjoys "vicarious immunity" for Sims' actions because Sims himself has judicial immunity from liability for the actions at issue in this case, noting that Alabama courts have extended discretionary function immunity to insulate a municipality or employer from vicarious liability for its agent's actions when the agent is due immunity.[10]  *Taylor v. City of Mobile*, No. CIV.A. 97-0778-CB-M, 2001 WL 313181 at *1 (S.D. Ala. Mar.

---

[9] In fact, Sims was the sole person to implement various organizational changes at the Board including transferring, hiring, and terminating employees, hiring consultants and a Deputy Director, creating new departments and implementing two reductions-in-force.  (June 7, 2006 Henry Dep. at pp. 18-20, 22-27).

[10] The court is not persuaded by Plaintiff's contention that the Board has waived any right to argue the defense of immunity by failing to specifically assert immunity in its answer to the complaint.  The Eleventh Circuit has held "the liberal pleading rules established by the Federal Rules of Civil Procedure apply to the pleading of affirmative defenses" and therefore, courts are cautioned to "avoid hypertechnicality in pleading requirements and focus, instead, on enforcing the actual purpose of the rule." *Hassan v. United States Postal Serv.,* 842 F. 2d 260, 263 (11th Cir. 1988). Because the purpose of Rule 8(c) "is simply to guarantee that the opposing party has notice of any additional issue that may be raised at trial so that he or she is prepared to properly litigate it . . . .,[w]hen a plaintiff has notice that an affirmative defense will be raised at trial, the defendant's failure to comply with Rule 8(c) [of the Federal Rules of Civil Procedure] does not cause the plaintiff any prejudice." *Hassan,* 842 F. 2d at 263 (11th Cir. 1988)(holding plaintiff was not prejudiced by defendant's failure to assert the affirmative defense of collateral source payments as plaintiff had notice of issue by questions posed in depositions and interrogatories); *see also Grant v. Preferred Research, Inc.*, 885 F. 2d 795, 797-98 (11th Cir. 1989)(holding plaintiff was not prejudiced by defendant's failure to assert statute of limitations defense in the answer as defendant raised the issue in its motion for summary judgment one month prior to trial); *see also Jones v. Miles,* 656 F.2d 103, 107 n. 7 (5th Cir. 1981) ("Failure to affirmatively plead the defense is simply noncompliance with a technicality and does not constitute a waiver where there is no claim of surprise.")
    With respect to immunity, the Eleventh Circuit requires only "minimally sufficient averments of good faith and immunity to fulfill the duty of asserting the issue." *Williams v. City of Albany*, 936 F. 2d 1256, 1259 (11th Cir. 1991)(holding that qualified immunity defense was not waived because "defendants show that all acts complained of were made in good faith … and plaintiff is not entitled to recover herein").  In any event, immunity is an "affirmative defense to personal liability …which can be pled as various states in a case . . . [including] a summary judgment motion pursuant to Rule 56(e)." *Skrtich v. Thornton*, 280 F. 3d 1295, 1306 (11th Cir. 2002).  Therefore, so long as the

19, 2001); *Gore v. City of Hoover*, 559 So. 2d 163, 165-66 (Ala. 1990); *Roden v. White*, 646 So. 2d 605, 611 (Ala. 1994). Defendant argues that the Board's Receiver is similar to an employee or agent who acted in eliminating Plaintiff's positions and is due immunity for those decisions, while the Board is similar to a municipality who had no input into those decisions and thus is due vicarious immunity under Alabama law.

It is beyond dispute that Judge Smith's Order vests Sims with "the status of an officer and agent of this Court," and "such immunities as by law vested with this Court." *United States v. Jefferson County*, 2:75-CV-666-CLS, Doc. # 935, at 4-6, 13 (N.D.Ala. July 8, 2002). This court recently concluded in the case of *Bowie v. Ronald Sims, et al.,* 2:05-CV-1050-RDP, that Judge Smith's Order bestows upon Sims judicial immunity for employment decisions rendered during his tenure as Receiver of the Board. *See Bowie v. Ronald Sims, et al.,* 2:05-CV-1050-RDP, Docs. # 13, 14 (N.D.Ala. December 7, 2005); *see also Carmichael v. Regional Board of Jefferson County*, 2:05-CV-2371-SLB, Doc. # 27 at pp. 7-8 (N.D. Ala. September 26, 2006) (Blackburn, C.J.) (holding Sims is due judicial immunity in his individual capacity). Despite the court's prior

---

defense of judicial immunity is "raised during trial or at any time before," the defense is not waived. *Caban-Wheeler v. Elsea*, 71 F.3d 837, 842 (11th Cir. 1996); *see also Ansely v. Heinrich*, 925 F. 2d 1339, 1348 (11th Cir. 1991)("[I]mmunity is a question of law for the court to decide preferably on pretrial motions").

Plaintiff's reliance on *Mordkofsky v. Calbresi*, 159 Fed. Appx. 938 (11th Cir. 2005) and *Boyd v. Carroll*, 624 F. 2d 730 (5th Cir. 1980) is misplaced. In *Mordkofsky*, the Eleventh Circuit found that a court may not *sua sponte* dismiss a complaint on the grounds of judicial immunity because it is affirmative defense that must be asserted by the defendant and not a bar to the district court's subject matter jurisdiction. *Mordkofsky*, 159 Fed. Appx. at 940. The issue of whether the defendant waived judicial immunity by failing to assert it in the answer was not addressed. In *Boyd*, the defendant did not raise the judicial immunity defense until his motion for a directed verdict at the conclusion of the plaintiff's case at trial. *See Boyd*, 624 F. 2d at 732. As the defendant had not previously raised the defense in any pleading, the Fifth Circuit held the defendant waived the affirmative defense. *See Boyd*, 624 F. 2d at 733. Neither case applies here.

Against this backdrop of liberal pleading standards, the court finds: (1) the averments in the Board's answer were minimally sufficient to put Plaintiff on notice of an immunity defense (*see* Defendant's Answer at Fifteenth, Twentieth, Twenty-Seventh, Thirtieth, and Thirty-First Defenses); (2) Defendant's explicit assertion of the judicial immunity defense in a Rule 56 pre-trial motion is sufficient to avoid waiver; and (3) regardless, pursuant to *Hassan*, any alleged violation of Rule 8(c) did not result in prejudice to Plaintiff because she has notice that the affirmative defense will be raised at trial.

ruling in *Bowie* and the fact that Sims is not a party in this case, Plaintiff focuses more of her argument here on whether *Sims,* not the Board, is due judicial immunity for the actions taken by him as Receiver.  The court is simply not inclined to revisit that issue given that Sims is not a party to this case.  However, suffice it to say that if Sims were a party to this case, he would be due judicial immunity for the actions about which Plaintiff complains for the same reasons enunciated by this court previously in the *Bowie* case.[11]  Accordingly,

_____

[11] The court's opinion in *Bowie* dismissing Sims because of judicial immunity noted that Judge Smith's Order granted Sims "the status of an officer and agent of this court," vesting him "with such immunities as by law vest with this court." (July 8, 2002 Order at ¶ 12).  Given the status bestowed upon Sims by Judge Smith's Order, this court found Eleventh Circuit law, which makes clear that court-appointed receivers are entitled to judicial immunity to the same degree as the appointing judge including immunity "from damages for those acts taken while they are acting in their judicial capacity unless they acted in the clear absence of all jurisdiction," *Bolin v. Story*, 225 F.3d 1234, 1239, 1240-42 (11th Cir. 2000), to be dispositive. *See also Property Management & Investments, Inc. v. Lewis*, 752 F.2d 599, 602 (11th Cir. 1985) ("[C]ourt-appointed receivers . . . enjoy judicial immunity for acts within the scope of their authority, and that . . . authority extends to carrying out faithfully and carefully the orders of the appointing judge.").  Because judicial immunity applies "even when the judge's acts are in error, malicious, or were in excess of his or her jurisdiction," *Bolin*, 225 F.3d at 1239; *see also Holmes v. Crosby*, 418 F.3d 1256, 1258 (11th Cir. 2005) (finding that members of parole board and individual parole officers were entitled to absolute judicial immunity from false imprisonment claims, even though revocation of plaintiff's parole was in error), the court rejected Bowie's argument that judicial immunity does not apply to Sims because he did not carry out his duties "faithfully and carefully."  The court's opinion noted that the Eleventh Circuit has made clear that the *quality* or *efficacy* of the acts is not at issue – the only relevant question is whether the acts performed were within the scope of Sims' authority as Receiver.  *See Property Management & Investments, Inc.*, 752 F.2d at 603-04; *Bolin*, 225 F.3d at 1239.  Unless Sims acted outside the scope of his appointed jurisdiction - which he clearly did not - judicial immunity applies.  *Property Management & Investments, Inc.*, 752 F.2d at 603-04 ("Since nothing in the complaint indicated that [the receiver] had acted outside of his authority and thus was not immune from suit, the district court acted properly when it granted [the receiver's] 12(b)(6) motion to dismiss on grounds of immunity."); *see, e.g., Stump v. Sparkman*, 435 U.S. 349, 357 n.7 (1978)("If a probate judge, with jurisdiction over only wills and estates, should try a criminal case, he would be acting in the clear absence of jurisdiction and would not be immune from liability for his action; on the other hand, if a judge of a criminal court should convict a defendant of a nonexistent crime, he would merely be acting in excess of his jurisdiction and would be immune").

In this case, just as in *Bowie*, there is no dispute that Sims was acting within the scope of his authority as Receiver of the Board when he allegedly discriminated against Plaintiff with regard to employment decisions.  Sims was specifically given the "power to hire, promote, demote, transfer, and remove subordinates as necessary." (July 8, 2002 Order at ¶ 2 (footnotes omitted)).  Plaintiff's citation to *Forrester v. White*, 484 U.S. 219 (1988), for the argument that Sims was acting outside of the scope of judicial immunity when making the employment decisions in this case, is inapposite.  In *Forrester*, the Supreme Court held that a state court judge who, pursuant to state law, had the

under Alabama law, the Board is also due the protection of "vicarious immunity" as an extension of the immunity bestowed on Sims by Judge Smith's Order.

The court notes, however, that it *is perplexed* by Paragraph 12 of Judge Smith's Order, which - as Plaintiff points out - vests Sims with immunity for employment decisions on the one hand, but then on the other hand requires the Personnel Board and Jefferson County (a non-party here) to indemnify Sims for liabilities, damages, and losses incurred and to pay for all expenses incurred in defending lawsuits or administrative proceedings in which Sims is named as a party "if such suit or proceeding is based on or arises out of any action taken within the scope of the Receivership." (*United States v. Jefferson County*, 2:75-CV-666-CLS, Doc. # 935, at 13 (N.D.Ala. July 8, 2002)).  The court fails to understand how, in light of the immunity enjoyed by Sims, Sims could undertake any action within the scope of his Receivership that could lead to the assessment of liabilities, damages, or losses for which the Board would need to indemnify him. In fact,  the law is clear that judicial immunity renders Sims absolutely immune from any suit – including one for money damages or injunctive/declaratory relief – "for those acts taken while [he was] acting in [his] judicial capacity unless [he] acted in the clear absence of all jurisdiction." *Bolin v. Story*, 225 F.3d 1234, 1239, 1240-42 (11th Cir. 2000).  Judicial immunity applies "even when [Sims'] acts are in error, malicious, or were in excess of his [] jurisdiction." *Bolin*, 225 F.3d at 1239, and thus, so long as Sims acted within the scope of his Receivership duties, judicial immunity absolutely prevents the assessment of any liabilities, damages, or losses against him. *Property Management & Investments, Inc. v. Lewis*, 752 F.2d 599, 603-04 (11th Cir.

---

authority to hire and fire certain court employees, was not due judicial immunity for any hirings and firings of court personnel that were not tied to any particular case or controversy before him. *Forrester*, 484 U.S. at 230. The court reasoned that those acts were administrative in nature, not judicial, and that therefore judicial immunity did not apply.  *Forrester*, 484 U.S. at 230.

By contrast in this case, Sims' actions were *all* taken pursuant to Judge Smith's Order, which ordered him to perform employment actions including implementing organizational changes like reductions-in-force.   In fact, the only reason why Sims had the authority to make employment decisions is because the court bestowed that power upon him and made him an officer of the court. Accordingly, were Sims a party to this case in his individual capacity - which he is not - he would be due judicial immunity for his actions about which Plaintiff complains in this case.

1985).  Thus, although it simply does not follow that the Board could be required to indemnify Sims for liabilities, damages, and losses arising out of any action taken within the scope of his Receivership, the court must interpret the meaning of Paragraph 12 in light of all its language.

Although Plaintiff suggests that the language of Paragraph 12 leaves the Board exposed to liability for actions taken by Sims as Receiver, that is simply not what Paragraph 12 provides.  Rather, Paragraph 12 requires the Board to *indemnify Sims* for any liabilities, damages, or losses he incurs as a result of suits against him for actions he took as Receiver - it does not put the Board on the chopping block directly (so to speak) by imposing liability on it for Sims' actions.  Reading Judge Smith's Order as a whole, the most reasonable interpretation of the "indemnity" requirement of Paragraph 12 relates to any liabilities, damages, or losses (and expenses) incurred as a result of the procedure for magistrate judge review of due process allegations, which is set forth and sanctioned by Judge Smith's Order in the paragraph that immediately precedes Paragraph 12.  Pursuant to Paragraph 11, Board employees who have been subjected to a demotion, suspension, discipline, or termination at the behest of Sims "shall be entitled to a due process hearing before a magistrate judge of this court" and, after a period for objections and appeals, the court "shall enter such orders as may be appropriate."  (*United States v. Jefferson County*, 2:75-CV-666-CLS, Doc. # 935, at 11-13 (N.D.Ala. July 8, 2002)).  Given that Judge Smith's Order specifically sets forth in Paragraph 11 a process for magistrate judge review of alleged due process violations by Sims, it stands to reason that Paragraph 12's requirement that the Board indemnify Sims for any liabilities, damages, or losses incurred in defending lawsuits or administrative proceedings in which Sims is named as a party refers specifically to those due process hearings.  In any event, the language of Paragraph 12 does not provide a separate basis for liability against the Board in this case, especially in light of the Order's clear intention to strip the Board of any right to be involved in employment decisions including the ones about which Plaintiff complains here.

Based upon the foregoing analysis, having considered all of the parties' arguments,[12] the court finds that only one conclusion can be reached in light of Judge Smith's Order.  The Board - which was not only uninvolved in the decisions at issue here, but literally stripped of any right to be involved in those decisions - simply cannot be liable for the actions of the court-appointed Receiver.  Put another way, a party who is not permitted to do anything cannot do anything wrong.  Whether that lack of liability arises out of the simple fact that the Board had no power to - and did not - take the actions of which Plaintiff complains, or whether the Board, as an extension of Sims' judicial immunity, is due vicarious immunity under Alabama law, there is simply no basis to hold liable an entity that was not responsible for the decisions at issue in this case.  As the court noted in its order requesting additional briefing on the issue of immunity, the irony of such a result is not lost on this court -- the very Order which appointed Sims as Receiver in an attempt to remedy repeated violations of a long-standing Consent Decree (that requires compliance with anti-discrimination laws), may have actually paved the way for (1) Sims to receive immunity and (2) the Board (which had no authority to make any employment decisions regarding Board employees) not to be subject to liability for any discriminatory decisions by Sims (or his subordinates) which Plaintiff contends took place here. Unfortunately, however, Judge Smith's Order leaves no other alternative.

Accordingly, the Board is not liable for the Plaintiff's claims in this case and, for this reason alone, Defendant's motion for summary judgment is due to be granted.  Alternatively, however, the court finds for

---

[12] The court is not persuaded by Plaintiff's reliance on court's decision in *Bowie* to dismiss Plaintiff's claims against Sims in his official capacity as "redundant," noting that those claims were nothing more than claims against the Board as an entity when the law is well settled that "[o]fficial capacity suits are against state agencies, not against the people through whom the agencies act." *Hobbs v. Roberts,* 999 F.2d 1526, 1530 11th Cir. 2005).  Plaintiff misinterprets the court's order in *Bowie* as evidence that the Board is the only party who may be held liable in this case.  Plaintiff's argument confuses two different legal issues -- the question of who may be properly named in a complaint and the question of who may be found liable for the actions at issue.  Simply because a party is the proper defendant in a case does not mean that party can be held liable, and thus Plaintiff's reliance on the court's dismissal order in *Bowie* is unpersuasive.  For the same reason, the court rejects Plaintiff's argument that Federal Rule of Civil Procedure 25(d) provides authority for holding the Board liable for Sims' actions.

the reasons outlined below that Defendant's motion for summary judgment is due to be granted because Plaintiff's claims fail on the merits as well.

**B.      Substantive Analysis of Age Discrimination Claims**

As a threshold matter, the court notes that Plaintiff cannot pursue both of her claims under the Alabama Age Act and the ADEA in this case.  The Alabama Age Act plainly states that it is a statute of alternative, not duplicative, relief.  "The starting point for all statutory interpretation is the language of the statute itself."  *United States v. DBB, Inc.*, 180 F.3d 1277, 1281 (11th Cir. 1999).  The Alabama Age Act provides that plaintiffs "may elect to pursue their remedies under Title VII . . . and the Age Discrimination in Employment Act, 29 U.S.C. § 621 *or in the alternative* bring a civil action in the circuit court of the county in which the person was or is employed." Ala. Code § 25-1-29 (1975) (emphasis added).[13]  The Alabama Age Act clearly entitles a plaintiff to only "one recovery of damages."  Ala. Code § 25-1-29 (1975).  Because the plain language of the Alabama Age Act forces a plaintiff choose *either* suit under the ADEA *or, in the*

_____

[13] Section 25-1-29 provides, in its entirety:

Any person aggrieved may elect to pursue their remedies under Title VII of the Civil Rights Act of 1964 as amended, and the Age Discrimination in Employment Act 29 U.S.C. Section 621 or in the alternative bring a civil action in the circuit court of the county in which the person was or is employed for such legal or equitable relief as will effectuate the purposes of this article. However, if an action is brought in the federal court, any action pending in the state court shall be simultaneously dismissed with prejudice. Further, any party bringing action under this section shall only be entitled to one recovery of damages. Any damages assessed in one court will offset any entitlement to damages in any other state or federal court. In any action, a person shall be entitled to a trial by jury of any issue of fact in any action for recovery of amounts owed as a result of a violation of this article, regardless of whether equitable relief is sought by any party in the action. Any employment practice authorized by the federal Age Discrimination in Employment Act shall also be authorized by this article and the remedies, defenses, and statutes of limitations, under this article shall be the same as those authorized by the federal Age Discrimination in Employment Act except that a plaintiff shall not be required to pursue any administrative action or remedy prior to filing suit under this article.

Ala. Code § 25-1-29 (1975).

*alternative,* suit under the Alabama Age Act, and because Plaintiff in this case has filed suit under the ADEA, the court finds that Plaintiff's claim under the Alabama Age Act is duplicative.  Having determined that Plaintiff may only pursue her federal ADEA claim in this case, the court turns to the substantive analysis of that claim.[14]

The ADEA provides that "[i]t shall be unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).  In order to fall under the ADEA's protections, an employee must be "at least 40 years of age." 29 U.S.C. § 631(a). The following burden-shifting scheme applies:  "Initially, the plaintiff must establish a *prima facie* case of discrimination. The employer then must respond with a legitimate, nondiscriminatory reason for its actions.  In order to prevail, the plaintiff must establish that the employer's articulated legitimate, nondiscriminatory reason was a pretext to mask unlawful discrimination." *Smith v. J. Smith Lanier & Co.*, 352 F.3d 1342, 1344 (11th Cir. 2003).  The plaintiff always bears the ultimate burden of proving that age was a determinative factor in the employer's decision to terminate her employment. *Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045 (11th Cir. 1989).

### 1.   ADEA *Prima Facie* Case

There are three methods by which a plaintiff may establish a *prima facie* case of age discrimination: by direct evidence of discriminatory intent; by meeting the test originally set out for Title VII cases in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); or by statistical proof of a pattern of discrimination. *Carter v. City of Miami*, 870 F.2d 578, 581 (11th Cir. 1989).  In this case, Plaintiff has not produced direct evidence of discrimination nor submitted statistical evidence. Accordingly, the *McDonnell Douglas prima*

---

[14] In any event, the court notes that the analysis of Plaintiff's claims under the Alabama Age Act and the ADEA is the same.  *See, e.g., Bonham v. Mortgage Inc.*, 129 F.Supp.2d 1315 (M.D. Ala. 2001).

*facie* case applies, although with slight variations because Plaintiff's claims are based upon the elimination of two positions as part of reductions-in-force. "Generally, a plaintiff in a job-reduction case can establish a *prima facie* case by demonstrating: (1) that she was in a protected age group and was adversely affected by an employment decision; (2) that she was qualified for her current position or to assume another position at the time of discharge or demotion; and (3) evidence by which a fact finder might reasonably conclude that the employer intended to discriminate on the basis of age in reaching the decision at issue." *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1082 (11th Cir. 1990); *Mitchell v. Worldwide Underwriters Ins. Co.*, 967 F.2d 565, 566 (11th Cir. 1992); *see also Smith v. J. Smith Lanier & Co.*, 352 F.3d 1342, 1344 (11th Cir. 2003).

As to the second element, "[w]here a particular job position is entirely eliminated for nondiscriminatory reasons, for the plaintiff to prevail against the employer she must show that she was qualified for another available job with that employer; qualification for her current position is not enough." *Earley*, 907 F.2d at 1083. If, however, the plaintiff's position was merely consolidated or reassigned to other employees, she "may establish [the second element of the] *prima facie* case by demonstrating that *she was qualified for her current position* or to assume another position at the time of discharge." *Williams v. Vitro Services Corp.*, 144 F.3d 1438, 1442 (11th Cir. 1998) (emphasis in original). Additionally, it is important to note that the ADEA "does not mandate that employers establish an interdepartmental transfer program during the course of an RIF, . . . or impose any added burden on employers to transfer or rehire laid-off workers in the protected age group as a matter of course." *Jameson v. Arrow Co.*, 75 F.3d 1528, 1532-33 (11th Cir. 1996) (citations omitted). Rather, the ADEA simply provides that a discharged employee "who applies for a job for which she is qualified and which is available at the time of her termination must be considered for that job along with all other candidates, and cannot be denied the position based upon her age." *Jameson*, 75 F.3d at 1533.

With respect to the third *prima facie* element of discriminatory intent, "the evidence must lead the factfinder reasonably to conclude either (1) that defendant consciously refused to consider retaining a plaintiff because of her age, or (2) that defendant regarded age as a negative factor in such consideration." *Allison v. Western Union Tel. Co.*, 680 F.2d 1318, 1321 (11th Cir. 1982) (internal citations omitted). The Eleventh Circuit has noted that an employee "face[s] a difficult burden" of showing discriminatory motive in an age discrimination case when the primary decisionmaker was "well over age forty and within the class of persons protected by the ADEA," *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1471 (11th Cir. 1991), as is the case here. It is undisputed that Sims - who is over 40 - was the sole person responsible for implementing both RIFs and selecting Plaintiff's positions for elimination. (Sims Dep., p. 48, 62, 73, 96-97; June 7, 2006 Henry Dep., p. 30).

As noted earlier, Plaintiff claims to have been discriminated against based upon her age during two separate RIFs: (1) when the Administrative Coordinator position she held was eliminated and she took another position with an annual decline in pay of approximately $7,000, and (2) when her position of Examination and Certification Assistant was eliminated as part of the Second RIF and she transferred to the Jefferson County Commission as an Administrative Assistant II. Here, as to the first *prima facie* case element, there is no dispute that at the time of both decisions at issue, Plaintiff was in the protected age group. The court will also assume that Plaintiff suffered an adverse employment action when she was informed of her position eliminations and accepted lower-paying positions instead.[15] The court also will assume, without deciding, that as to both decisions, Plaintiff has satisfied her second *prima facie* burden to show either that she was qualified for her current position or to assume another position at the time of discharge (if her position

---

[15] The court notes, however, that Plaintiff's job eliminations are not garden-variety RIF claims. In both cases, Plaintiff was offered and took other positions within the Board, albeit at a lower classification and pay.

was consolidated or reassigned) or that she was qualified for another available position at the time of the RIF

(if her position was completely eliminated).[16]

Nevertheless, as to both RIF decisions, the court finds that Defendant is due summary judgment

because Plaintiff has failed to satisfy her third *prima facie* burden to present evidence by which a fact finder

---

[16] In this case, with respect to the *First* 2003 RIF, the parties dispute whether Plaintiff's Administrative Coordinator position was completely eliminated, or whether her duties were merely consolidated into the Executive Assistant position occupied by Valerie Pettaway Johnson. As noted earlier, if Plaintiff is correct that her position duties were consolidated, she can establish her *prima facie* burden by showing either that she was qualified for her current position or that she was qualified for another available position at the time of the RIF (not earlier or several months after). *Earley*, 907 F.2d 1077, 1083 (11th Cir. 1990) In support of her consolidation argument, Plaintiff notes her belief that her Administrative Coordinator duties were reassigned to the Executive Assistant position that was created in October 2002 - *one year* prior to the October 2003 First RIF. Plaintiff points to her own testimony and the testimony of Greg James that the Administrative Coordinator position and the Executive Assistant positions were identical with the exception of a requirement of a Bachelor's Degree for the Executive Assistant position, and she maintains that viewing the job duties in a light most favorable to her, there is a question of fact as to whether or not the positions were consolidated. (Doc. # 18, at 24-25). Defendant disagrees that the positions were the same and points out that Board has not hired an individual into the titled position of Administrative Coordinator since the First RIF. (July 20, 2006 Henry Dep., pp. 59-61).

Even viewing the evidence in the light most favorable to the Plaintiff, and even assuming that the duties of Administrative Coordinator and Executive Assistant are the same, the court nonetheless has serious concerns about concluding that the First RIF resulted in "consolidation" of Plaintiff's position and reassignment of her duties to Pettaway given that any such reassignment of duties occurred in October 2002 when the Executive Assistant position was created -- *one year prior* to the October 2003 RIF decision to eliminate Plaintiff's Administrative Coordinator classification. Nonetheless, the court need not decide whether to label Plaintiff's Administrative Coordinator as "eliminated" or merely "consolidated" because the court will assume, without deciding, that as to the First 2003 RIF, Plaintiff has satisfied the second element of her *prima facie* case and shown qualification for her position or another available Board position.

With respect to the *Second* 2004 RIF, Plaintiff also questions whether her position was, in fact, eliminated because she notes that "[t]wo Examination and Certification Assistant positions were kept after the RIF." (Doc. # 18, at 30). Plaintiff's argument is contrary to the undisputed evidence which shows that the entire Certification division was eliminated and the employees who held those positions were, in fact, taken out of those defunct positions and relocated to the Records Management Division. (Henry Dec., ¶ 27; McCullough Dep., pp. 66, 78). Thus, because the undisputed evidence demonstrates that Plaintiff's Certification position - and, in fact, the entire Certification division - was eliminated, Plaintiff can only meet her second *prima facie* burden as to this claim by showing that another position for which she was qualified was available in the company at the time of the elimination. Given that Plaintiff requested and received a transfer to another Board position prior to the effective date of the Second RIF, the court finds that Plaintiff has established her qualification for another position at the time of that RIF and satisfied this element.

might reasonably conclude that Sims intended to discriminate against Plaintiff on the basis of age when eliminating her positions.  The court will address the evidence Plaintiff offers in support of the third element of her *prima facie* case by analyzing each RIF decision separately.

### a.      First RIF - October 2003

With respect to the October 2003 First RIF, Plaintiff argues that sufficient evidence exists to support a finding that Sims discriminated against Plaintiff because of her age because:  (1) the October 2002 creation of the Executive Assistant position, the December 2002 hiring of 39-year old Valerie Pettaway Johnson into that position, and the October 2003 elimination of Plaintiff's Administrative Coordinator position demonstrates that "the Receiver set her up . . . from the beginning of his tenure [and] eventually succeeded in removing her as his assistant and replacing her with a younger female,"  (Doc. # 18, at 24-25); (2) Sims made age-negative comments which support an inference that he sought to hire younger workers at the Board; and (3) Sims' treatment of her after the elimination decision (including being escorted out of the building and forced to retrieve her belongings at another time) demonstrates his bias against her.  As to each of these arguments, the court finds that Plaintiff has not fulfilled her "difficult burden" to show that age played any factor in Sims' decision to eliminate her Administrative Coordinator position.

### i.      Executive Assistant/Administrative Coordinator Positions

First, the court is not persuaded that there is substantial evidence that Sims - who falls within the protected age category himself - devised a year-long plan to subtly discriminate against Plaintiff because of her age.  Even assuming that the Administrative Coordinator and Executive Assistant positions were, in fact, the same job with different titles,[17] the metamorphosis of these positions is not evidence of pretext.  No matter

---

[17] Even viewing the facts in the light most favorable to Plaintiff, the court is not persuaded that the positions were the same.  Plaintiff does not dispute that the newly created Executive Assistant position required a Bachelor's Degree while the Administrative Coordinator position did not.  Furthermore, it is undisputed that shortly before Plaintiff was assigned to perform other duties, the landscape of the Board changed significantly with the appointment of Sims as Receiver and the court's decision to place Sims - and therefore his assistant - in charge of managing a sizeable increase

how similar the positions are, aside from the rare "conspiracy theorist," the court is not persuaded that a rational jury could conclude that the creation of the Executive Assistant position *one year prior* to a RIF that eliminated a number of positions - not just Plaintiff's Administrative Coordinator position - demonstrates an elaborate scheme to eventually terminate Plaintiff because of her age.

Moreover, Valerie Pettaway Johnson - who, at 39, was herself only one year shy of falling into the protected age category - was hired into the Executive Assistant position in December 2002 after the Board received open applications. Although she could have applied and possibly been selected for the position, Plaintiff *chose not to* do so and therefore was not considered for that job. (Henry Dec., ¶ 11). Plaintiff's failure to even express interest in the Executive Assistant position significantly undermines her argument that Johnson was hired to "replace" her and that Sims waged a year-long war to discriminate against her based on age. *See, e.g., Smith v. J. Smith Lanier & Co.*, 352 F. 3d 1342, 1344-45 (11th Cir. 2003) (finding that a general interest in being rehired without submitting an application is not enough to establish a *prima facie* case of age discrimination).

In fact, it is undisputed that just a few weeks after Plaintiff was told that her Administrative Coordinator position had been chosen for elimination: (1) Plaintiff successfully grieved that decision on the basis that she was not, in fact, serving the duties of the Administrative Coordinator classification;[18] (2) on November 20, 2003 Sims gave Plaintiff the opportunity to return to work as the Examination and Certification Assistant -- the job that she had been performing even though she was technically still listed in her old

---

in the Board's budget. Even assuming that the Executive Assistant also performed all of the duties that Plaintiff performed as Administrative Coordinator, there can be no dispute that additional duties also were incorporated into the Executive Assistant role.

[18] It is undisputed that at least as of May 28, 2003, five months before her Administrative Coordinator position was eliminated, Plaintiff had been reassigned to the Certification Department and had indeed been performing the duties of another classification.

Administrative Coordinator job classification;[19] and (3) at that same time, Sims gave Plaintiff the alternative option of being placed on the layoff list for Administrative Coordinator if she did not wish to return as the Examination and Certification Assistant.  These actions are simply not substantial evidence that Sims was targeting Plaintiff because of her age.

### ii.      Age-Negative Comments

Plaintiff's second argument that Sims made age-negative comments which support an inference that he sought to hire younger workers at the Board is likewise unavailing.  According to Plaintiff, Sims responded during a meeting to an audience member's comment that the Board should hire the brightest and best employees by agreeing that the Board needed to bring in "new blood"-- a word which Plaintiff claims is a "code word" for age discrimination.  Although the Eleventh Circuit has held that age-negative comments that fall below the standard required for direct evidence (as does the comment attributed to Sims in this case[20]) can take an ADEA plaintiff through the summary judgment threshold, the Eleventh Circuit reached that conclusion in a case where the age-negative comments *were coupled with the company's failure to move the plaintiff to another available job*. *Rollins v. TechSouth, Inc*., 833 F.2d 1525, 1531 (11th Cir. 1987) (noting that not moving plaintiff to another job raised an issue for trial "[w]hen coupled with the age-related comments allegedly made by the supervisors").  In this case, not only has Plaintiff failed to give a timeline or other context for the "new blood" comment, but Plaintiff was, in fact, given a new position after the RIF.  Thus, this court is left only with a stray "new blood" comment unrelated to the decisionmaking process and not directed at Plaintiff – a comment which the Eleventh Circuit has held is insufficient standing alone to

---

[19] Although Plaintiff returned to work in the position of Examination and Certification Assistant at a lower salary and classification than she previously held, the undisputed evidence shows that she had, in fact, been performing the duties of that classification for over a year even though she was still receiving pay at the higher level of her former position.

[20] As noted earlier, Plaintiff has not argued nor offered direct evidence of age discrimination in this case. In fact, Plaintiff admitted in her deposition that she has no direct evidence that Sims discriminated against employees of the Board based on age.  (Henry Dep., p. 82).

establish discriminatory intent. *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 611 (11th Cir. 1987)(holding supervisor's statement "at your age, I don't believe you could pass [a physical examination]" was "too attenuated" to employer's hiring practices to be of any "legal significance").

### iii.    Other Evidence of Discriminatory Intent

Finally, Plaintiff's other "evidence" that Sims targeted her because of her age - after she was notified of her job elimination, she was escorted out of the building and forced to retrieve her belongings at another time - does not demonstrate that age played any part in Sims' decision.  Plaintiff has not shown that Sims treated Plaintiff any differently than any other person who was affected by the First RIF.  In fact, Plaintiff was one of six individuals affected by the First RIF, including one individual who was under the age of forty.[21] Moreover, Plaintiff's allegation that Defendant failed to place her on a layoff list is simply not true.  It is undisputed that on November 20, 2003, twenty days after the October 31, 2003 elimination of Plaintiff's position, Plaintiff was offered the chance to either be placed on the lay-off list for Administrative Coordinator or to return to work as an Examination and Certification Assistant (which she chose).  (Doc. # 15, Ex. E).

---

[21] Plaintiff's counter-argument, that age discrimination can be inferred because, statistically, all but one employee affected by the First RIF was over forty, cuts no ice at all.  In *Watkins v. Sverdrup Technology*, 153 F. 3d 1308 (11th Cir. 1998), the Eleventh Circuit reiterated that any data purporting to be evidence of discrimination must be statistically significant.  *Watkins*, 153 F. 3d at 1315.  *See also Benson v. Tocco, Inc.*, 113 F.3d 1203, 1209-10 (11th Cir. 1997) (noting that plaintiff-Archambault raised jury question of pretext in part through expert's "statistically significant" conclusion that employer terminated workers over 40 years-of-age at five times the rate that it terminated younger workers during the RIF, and workers over 50 years-of-age at three times that rate); *Eastland v. Tennessee Valley Auth.*, 704 F.2d 613, 625 (11th Cir. 1984)(finding regression analysis insufficient to establish *prima facie* case of racial discrimination in promotions because of "the weakness of the theoretical foundation and the failure to control for job category").  In this case, Plaintiff's data - which simply notes the age of any employee affected by the RIF regardless of classification, department, seniority, or other control factors - lacks "sufficient depth, specificity and probative value" to constitute statistical evidence.  *Watkins*, 153 F. 3d at 1314-15.  *See also Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 596 (11th Cir. 1987) ("[A] plaintiff may not . . . merely rest on the laurels of her *prima facie* case in the face of powerful justification evidence offered by the defendant.").

Given the "difficult burden" to show that Sims consciously refused to consider retaining Plaintiff because of her age, or regarded age as a negative factor in the decision to eliminate her position, the court finds that Plaintiff's purported "evidence" of discriminatory intent as to the First 2003 RIF decision is simply not sufficient in this case, and summary judgment for Defendant is appropriate as to this claim.

### b.     Second RIF - 2004

With respect to the Second 2004 RIF, Plaintiff argues that evidence of age discrimination lies in Sims' "arbitrar[y] chang[e of] the procedures for implementing RIFs and determining seniority," which she believes allowed him to terminate Plaintiff's position while retaining two younger employees in the same classification. (Doc. # 18, at 28). As a result of Sims' alleged manipulation of the rules, Plaintiff, who at the time was the most senior clerical employee at the Board, had to obtain employment at a much lower grade or be without a job. For the reasons outlined below, the court rejects Plaintiff's contention and finds no evidence of discriminatory intent in Sims' interpretation of the Board's seniority rules.

It is undisputed that once certain classifications were targeted for elimination due to lack of work, seniority was the determining factor when deciding who would be laid off in those classifications. (James Dep., pp. 51-52; Sims Dep., pp. 117-20). Nevertheless, the parties dispute whether the Board should have been considered by Sims as one department for seniority purposes. (James Dep., pp. 51-52; Sims Dep., pp. 117-20; Docs. # 17, 19, Ex. B; June 7, 2006 Henry Dep., Ex. 2, p. 39). Plaintiff believes that Sims' interpretation of "seniority" - time in a particular classification as opposed to total time as a Board employee - is evidence of his discriminatory intent. Unfortunately for Plaintiff, the undisputed evidence suggests that Sims' interpretation of the seniority rules was not as "arbitrary" or "manipulative" as Plaintiff suggests.

The Board's corporate representative testified that Rule 11.13 of the May 2003 Board Rules and Rule 11.12 of the April 2005 Board Rules both officially required calculation of time in *class* for seniority (Sims' interpretation of the rules) - as opposed to total time served at the Board (Plaintiff's interpretation of the rules)

(McCullough Dep., pp. 88-95).  Nonetheless, Plaintiff is correct that those rules had not always been applied in practice. Sims acknowledges that prior to his tenure, some elimination and termination decisions were based upon general department-wide seniority rather than time in a particular classification.  (Sims Dep., p. 117).  Greg James, who was Interim Director immediately before Sims, confirmed that during his tenure, individual Board divisions were not defined as separate and distinct divisions for the purpose of seniority calculation.  (James Dep., pp. 51-52). By contrast, Sims conducted his RIFs by looking at each employee's seniority based upon time in a particular class - which the testimony suggests was the official requirement of the Board rules. (Sims Dep., pp. 117-20; James Dep., pp. 51-52).  As a result, Plaintiff, who had been moved from division to division and class to class after Sims' arrival was determined in the Second 2004 RIF to have the lowest seniority of the Examination and Certification Assistants. (Henry Dec., ¶ 26). According to James, had the Second 2004 RIF been conducted according to how the rules were interpreted when he was Interim Director, Plaintiff would not have lost her Examination and Certification position.  (James Dep., p. 52).

Sims does not dispute that his interpretation of the seniority rules may have been inconsistent with interpretations by prior Board personnel.  According to Sims, "one of [his] charges was to look in terms of revising, reforming, and clarifying the rules and regulations, because at the time, there seemed to be two or three different versions of the rules and regulations were used both in the Board and outside in the jurisdictions.  And so as to get some consistency in terms of everybody, for lack of better words, singing off the same hymnal."  (Sims Dep., p. 13).   In carrying out this charge, Sims felt that the RIF rule should be clarified.  (Sims Dep., pp. 117-19).   Thus, he determined that if a reduction was general in nature, seniority would be measured across the Board system, while seniority for intra-departmental reductions would be measured in the particular class or pay grade in that department.  (Sims Dep. p. 120).

The undisputed evidence shows that Plaintiff was one of twenty individuals affected by the Second RIF, including employees within the protected class - Greg James (56), June Storey (53), Andrew Douglas

(53), Cynthia Dowe (55), and Andre Dickerson (53) - and employees younger than 40 - Laloria Marsh (34), Denise Morgan (38), Sandra Jackson (36), Ericka Watt (29) and Rhonda Lumzy (34).  (Doc. # 15, Ex. J, pp. 4-6).  There is no evidence that Sims applied the seniority rule any differently with respect to Plaintiff than he did with respect to the positions of the other nineteen employees whose positions were eliminated as part of the Second 2004 RIF.  Plaintiff, who had the least seniority in her classification as Examination and Certification Assistant, was issued a notice of position elimination, while Latonia Reynolds and Angela Smith, two employees under the age of forty who had the most seniority in their classification, were retained at the Board, although their positions were moved to the Records Management Division because the Certification Division was eliminated.  (Henry Dec., ¶ 27; McCullough Dep., pp. 66, 78).

Having considered all of the evidence regarding Sims' interpretation of the seniority rules, the court concludes that the following undisputed evidence belies Plaintiff's contention that Sims manipulated the seniority rules to target Plaintiff because of her age: (1) prior to Sims' tenure, the Board's seniority rules had been interpreted in different ways; (2) Sims interpreted the court's instructions to him to include clarifying and streamlining Board rules, including the RIF procedures; (3) as Receiver, Sims defined the RIF seniority rule to apply two different ways in two different situations; (4) in the Second 2004 RIF, Sims applied the seniority rule consistently with respect to twenty employees, many of whom were not within the protected age category; and (5) Plaintiff's Classification Division was eliminated and as a result of Sims' interpretation, and the two employees with more seniority in that classification were retained and moved to another division while Plaintiff's position was designated for elimination.   In light of this Rule 56 evidence, the fact that the two employees who were retained were younger than Plaintiff is simply not enough to satisfy Plaintiff's "difficult burden" to demonstrate that Sims intentionally interpreting the seniority rules to negatively affect Plaintiff because of her age.  Accordingly, because Plaintiff has not met her third *prima facie* burden as to the Second 2004 RIF decision, summary judgment in favor of Defendant is due to be granted as to this claim as well.

### 2. Non-Discriminatory Reasons for the Decisions and Evidence of Pretext

Alternatively, even if Plaintiff had satisfied her *prima facie* burden as to both RIF eliminations - which she has not - summary judgment for Defendant would still be appropriate because Plaintiff has not shown that Defendant's legitimate, non-discriminatory reasons for the decisions at issue were a pretext for age discrimination. The Eleventh Circuit has recognized that a RIF which results in the elimination of a position is a legitimate, non-discriminatory reason for termination of an employee. *Tidwell v. Carter Products*, 135 F.3d 1422, 1426 (11th Cir. 1998); *Zaben v. Air Products & Chem., Inc.*, 129 F.3d 1453, 1457-58 (11th Cir. 1997). Thus, the salient question is whether Defendant had legitimate, nondiscriminatory reasons for selecting *Plaintiff's* position for elimination. As to both the First and Second RIFs, Sims testified that he determined which classifications would be eliminated based upon "lack of work" - both at the time of the decision and in anticipation for the future. (Sims Dep., pp. 48, 61-62, 73, 96-97). When determining which employees would be eliminated within those classifications, Sims relied upon seniority.

Because Defendant's burden of articulating a legitimate, non-discriminatory reason is one of production - not persuasion - the court finds that burden to be satisfied here. Thus, the ultimate burden of persuasion remains with Plaintiff, and she now has the "burden of proving [that the employer's proffered explanation is pretextual, which] merges with [her] ultimate burden of proving that age was a determining factor in h[er] discharge, [which] can be met by showing that a discriminatory reason more likely than not motivated the employer's decision, or by discrediting the employer's proffered explanation." *Watkins v. Sverdrup Technology, Inc.*, 153 F.3d 1308, 1314 (11th Cir. 1998) (quoting *Clark v. Coats & Clark, Inc.,* 990 F.2d 1217, 1228 (11th Cir. 1993). "Under the latter approach, plaintiff must demonstrate 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find [all of those reasons] unworthy of credence.'"

*Watkins*, 153 F.3d at 1314 (quoting *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997) (internal quotation marks and citation omitted).

Plaintiff has not met this burden. Essentially, Plaintiff's evidence of pretext consists of the same evidence offered in support of her *prima facie* case as to the two RIF decisions  (which was rejected by the court above as outlined in Section III.B.1., *supra*, and which will not be addressed again),[22] in addition to her allegation that Sims' reason for eliminating her position was simply not "plausible" in light of the increased budget and mandate given by the court to the Receiver**.** (Doc. # 18, at 30).  Plaintiff claims that the Board had increased its budget from $5 million to $16 million, which she believes to be inconsistent with laying off employees.  According to Plaintiff, under those circumstances, "a reasonable jury could determine that [the lack of work] reason is a sham and a pretext for age discrimination." (Doc. # 18, at 30).

Plaintiff's argument - which challenges the very decision to implement two reductions-in-force as opposed to the decision to eliminate Plaintiff's positions in particular - is unavailing.  As noted earlier, the Eleventh Circuit has recognized that a RIF which results in the elimination of a position is a legitimate, non-discriminatory reason for termination of an employee. *Tidwell*, 135 F.3d at 1426; *Zaben*, 129 F.3d at 1457-58.  Moreover, given Judge Smith's grant of "broad employment powers to the Receiver, including the

---

[22] The court does note, however, that in making her arguments for pretext as to the Second 2004 RIF elimination, Plaintiff puts a different "spin" on two of her previous arguments that the court has already addressed in the context of the *prima facie* discriminatory intent requirement.  First, Plaintiff challenges Sims' "lack of work" explanation by noting that, with respect to the Second RIF, "[t]wo Examination and Certification Assistant positions were kept after the RIF." (Doc. # 18, at 30).  As the court explained earlier, however, the undisputed evidence shows that those two positions were not retained in the Certification Division.  Rather, that the entire Certification Division was eliminated because of lack of work, and the employees who held those positions were relocated to the Records Management Division.  (Henry Dec., ¶ 27; McCullough Dep., pp. 66, 78).  Second, Plaintiff challenges Defendant's decision to eliminate her position because she claims that she was qualified to remain an Examination and Certification Assistant and could have easily transferred into the Records Management Division in that position. (Doc. # 18, at 30).  This argument is simply another way of disagreeing with Sims' interpretation of the seniority rules, which guided his decision to eliminate her position and reclassify the other two Examination and Certification Assistants as Records Management Division employees. The court has previously addressed Plaintiff's challenge to Sims' seniority interpretation at length in Section III.B.1.b, *supra*.

power to hire, promote, demote, transfer, and remove subordinates as necessary" and to "perform the financial, contractual, legal, administrative, personnel duties of the Personnel Director and Board [including] assess[ing] the present organizational structure of the Personnel Board" (*United States v. Jefferson County*, 2:75-CV-666-CLS, Doc. # 935, at 2, 11-12 (N.D.Ala. July 8, 2002), this court cannot conclude that a mere increase in the Board's budget demonstrates that the implementation of two RIFs which affected at least 25 Board employees was a pretext to discriminate against Plaintiff because of her age. Despite the increase in budget, Judge Smith not only gave Sims the power to implement RIFs, but he encouraged him to assess the present organizational structure of the Board.

It is the well-settled law of the Eleventh Circuit that this court does not sit as a "super-personnel department that re-examines an entity's business decisions." *Alpin v. Sears Roebuck & Co.*, 940 F. 2d 1497, 1501 (11th Cir. 1991). "[A] plaintiff employee may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reason as long as the reason is one that might motivate a reasonable employer." *Pennington v. City of Huntsville*, 261 F. 3d 1262, 1267 (11th Cir. 2001). Indeed, an "employer may [take an employment action] for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." *Nix v. WLCY Radio/Rahall Communications*, 738 F. 2d 1181, 1187 (11th Cir. 1984).

Keeping in mind the Eleventh Circuit's admonishments not to revisit a business entity's legitimate decisions, including the decision to implement a reduction-in-force, and particularly because there is nothing in the Rule 56 record to suggest it would be appropriate to do so, the court will not question the reasoning behind Sims' decision to eliminate Board personnel. Because Plaintiff has not presented substantial evidence which would show, with respect to the elimination of her *particular* positions, that Defendant's legitimate reasons for the eliminations are merely a pretext for age discrimination *or* that a reasonable jury could conclude that age discrimination was a "motivating factor" for the employment actions even though

Defendant's legitimate reasons may also be true or have played some role in the decisions, summary judgment for Defendant as to both of Plaintiff's claims is appropriate for this alternative reason as well.

**IV.    Conclusion**

For all the reasons stated above, the court finds that Defendant's motion for summary judgment is due to be granted.  A separate order will be entered.

**DONE** and **ORDERED** this _____23rd_____ day of February, 2007.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE